UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF WASHINGTON
AT TACOMA

| | |
|---|---|
| STEVEN D. MAHONEY,<br><br>                          Petitioner,<br><br>    v.<br><br>PAT GLEBE,<br><br>                          Respondents. | No. C09-5251 FDB/KLS<br><br>**REPORT AND RECOMMENDATION**<br>**Noted for: December 18, 2009** |

    This case has been referred to United States Magistrate Judge Karen L. Strombom
pursuant to Title 28 U.S.C. § 636 (b) (1) and Local MJR 3 and 4.    Petitioner Steven D.
Mahoney filed a 28 U.S.C. § 2254 habeas corpus petition related to his 2004 convictions.  Dkt.  5
and Dkt. 6 (brief in support).  Respondent filed an Answer (Dkt. 15) and submitted relevant
portions of the state court record.  Dkt. 16.

    Having carefully considered the parties' filings and the record relevant to the grounds
raised in the petition, the undersigned recommends that Mr. Mahoney's habeas petition be
denied and this action dismissed.

REPORT AND RECOMMENDATION - 1

# I. STATEMENT OF THE CASE

Mr. Mahoney is in the Washington Department of Corrections' custody pursuant to a conviction by jury verdict for first degree assault, felony harassment, and unlawful imprisonment (all of which are domestic violence), committed on May 25, 2003. Dkt. 16, Exh. 1. Each count includes a deadly weapon enhancement. *Id.* The Clark County Superior Court (the Honorable Diane Woolard) sentenced Mr. Mahoney to 172 months of confinement. *Id.* at 5.

## A. Factual Background

The Washington Court of Appeals summarized the facts in Mr. Mahoney's case as follows:

> Shirlyn[1] and Mahoney had been married for seven years when the couple began to experience marital difficulties, and Shirlyn moved out of the family home. In April 2003, she obtained a restraining order against Mahoney because he had thrown an object through her van window while she was inside the home retrieving her belongings.
>
> On May 23, Shirlyn stopped by to pick up more items. Mahoney invited her inside and she reluctantly entered. He looked as if he had been drinking. Once Shirlyn was inside, Mahoney told her, "This is a very dangerous place in here." Report of Proceedings (RP) at 181. He grabbed her by the hair and threw her against the wall. He started saying over and over, "I'm gonna kill you, bitch." RP at 181. Then he grabbed a knife from the knife drawer and threatened her with it. She started to scream and he told her, "stop screaming or I'll stab you right in the heart." RP at 183. When Shirlyn asked him what would happen to their kids if he killed her, Mahoney put the knife down and began punching her in the face.
>
> Shirlyn attempted to escape through a window but Mahoney hit her from behind and she fell. He then began hitting her with a golf club. He also placed his fingers inside her nose and pulled up in a manner that caused Shirlyn to believe that he was trying to break her neck. Eventually, Shirlyn broke free, ran for the door, and finally made it out onto the deck screaming. Neighbors came running to her aid and Mahoney retreated back inside the house.
>
> Police arrived and surrounded the residence. During the course of a two-hour standoff with the police, Mahoney lit little fires inside the house. The flames would go out and then flare up again. Finally, Mahoney came out of the house, yelling for the police to shoot him and holding a knife toward his heart. Police

took Mahoney into custody, noting on the intake form that he was irrational. Tests showed that he had a blood alcohol level of .18.

Shirlyn was in the hospital for five days. She suffered an open depressed skull fracture, an inner ear concussion, and multiple cuts requiring stitches.

The State charged Mahoney with first degree assault with a deadly weapon (Count 1), first degree assault with intent to cause great bodily harm (Count 2),[2] first degree arson (Count 3), felony harassment (Count 4), felony violation of a no contact order (Count 5), and unlawful imprisonment (Count 6). Each count included an identical deadly weapon enhancement clause. On September 15, Mahoney pleaded not guilty due to insanity and diminished capacity.

On September 18, the trial court ordered that "[e]ach party shall provide the other party with the test results & other items which their experts used to form their opinion." Clerk's Papers (CP) at 110. Mahoney's expert, psychologist Dr. Donald True, submitted a report in which he diagnosed Mahoney with depression and psychosis not otherwise specified (NOS), primary; and alcohol dependence and alcohol disorder NOS, secondary. In his report, True stated that at the time of the incident, Mahoney believed that his wife was "under the influence of the Devil or Satan .... He could not appreciate his wrongdoing at the time." CP at 217-18.

The State moved in limine to preclude the insanity defense. At the hearing, the defense made an offer of proof, and True testified that Mahoney was unable to perceive the nature and quality of his acts at the time of the attack. True also testified that Mahoney had "a[n] underlying psychotic vulnerability" and that alcohol had a "triggering effect of making his psychotic NOS worse and more manifest." RP at 45-46. True further testified that alcohol was a contributing factor in Mahoney's attack on his wife, and that the attack would not have occurred without the alcohol. On the basis of this testimony, the trial court precluded the insanity defense, but it allowed the defense of diminished capacity.

Shirlyn testified that Mahoney did not appear to be staggering or totally drunk on the day of the attack. According to her, he was not sweating or showing signs of delirium tremens. She further testified that in the months leading up to the attack, Mahoney blamed her for ruining his life and taking his money.

Thomas Panich, Mahoney's neighbor, testified that before the attack he would have occasional contact with Mahoney. Panich would sometimes talk to Mahoney about neighborhood matters and about religious issues. Mahoney never said anything to Panich about anyone being possessed by a demon or the devil.

REPORT AND RECOMMENDATION - 3

True's testimony was consistent with his psychological report and with his earlier offer of proof on the insanity defense. During cross-examination by the State, True acknowledged that there were some indications that Mahoney was malingering or pretending. He stated:

> In Mr. Mahoney's case, there are indications that -- scientifically that - that he might -- might have been making some of this stuff up, and in fact, the doctors at Western State think that's happening significantly.

> Each of the scientific tests that I did has some sort of check on that and even though he scores in ways that raises those questions, I believe the best scientific analysis of it is that he is telling us straight stuff, by and large.

RP at 405-06.

On rebuttal, Dr. Margaret Dean, a staff psychiatrist at Western State Hospital, testified that at the outset of her evaluation, Mahoney was remorseful about what he did to his wife. Dean testified that Mahoney did not make any statements to her about anyone being possessed by the devil. She further testified that Mahoney showed no signs of having a psychotic illness and that he did not have a history of major mental illness. Dean's primary diagnosis was alcohol dependence, with a provisional diagnosis of depressive disorder. Dean concluded that Mahoney did not have a psychotic illness at the time of the assault.

Dr. Marilyn Ronnei, a clinical psychologist at Western State Hospital, testified that when she interviewed Mahoney, he was alert and able to follow their conversations easily. She did not note any symptoms of psychosis. Ronnei further testified that some of Mahoney's psychological tests indicated that he might be misrepresenting his true ability to function. Ronnei opined that Mahoney was capable of forming intent at the time he attacked his wife.

At the conclusion of the expert testimony, defense counsel advised the court that they were not going to call their character witness. The court asked Mahoney if he had participated in that decision and Mahoney responded, "Your Honor, if Satan's allowed to testify in your courtroom, then I -- I ask that Jehovah be allowed to be in this courtroom at the same time." RP at 615-16.

In response, the court suggested that the experts from Western State examine Mahoney. Though Mahoney spoke with the experts briefly, he refused to be fully evaluated. After the experts spoke with Mahoney, the court heard an offer of proof from doctors Dean and True. Dean testified that when she talked to Mahoney, he had expressed anger and frustration about the testimony he had heard that morning, which, in her clinical judgment, demonstrated that he was

able to follow and understand the court proceedings. She testified that Mahoney showed a reality-based level of anger and frustration, along with sadness and shame about how he was portrayed. Mahoney's in-court statements did not change Dean's opinion that Mahoney was not psychotic or delusional. Dean further testified that she reviewed Mahoney's jail medical records and that they contained nothing to indicate any psychotic symptoms while he was in custody.

True, on the other hand, testified that he did not believe that Mahoney was pretending. After hearing from the experts, the court concluded that Mahoney had not met the burden of establishing incompetence and it decided to proceed with the trial.

Subsequently, the court conducted a CrR 3.5 hearing on statements Mahoney made to Officer Telford. The court advised Mahoney of his rights under CrR 3.5. Mahoney responded that he did not understand the court. The court determined that Telford's testimony was admissible and allowed him to testify before the jury. Telford testified that Mahoney had admitted being angry with his wife and throwing an object through the windshield of her van.

Following Telford's testimony, defense counsel asked the court for permission to withdraw based on Mahoney's claim that his counsel was "in cahoots" with the prosecutor, who was a "minion of the Devil." RP at 731. The court denied the motion.

The State next called Marc Fischel, who testified that he had spoken to Mahoney a few days before the May 25 incident and that Mahoney had complained about his wife's spending habits. Fischel did not recall Mahoney saying the devil had possessed his wife. On the other hand, he specifically recalled the incident where Mahoney broke his wife's windshield.

Fischel testified that Mahoney knew that Fischel was a minister and that they sometimes discussed religious issues. Fischel further testified that on one occasion Mahoney told him that he thought everything would be better if he killed his wife. The trial court instructed the jury that they should not consider the fact that the witness was a minister when weighing his character or credibility.

During the State's rebuttal case, the State filed an amended information, reducing the charge of felony violation of a no contact order to a misdemeanor, and removing the deadly weapon enhancement from the arson charge. Defense counsel stated that he did not object to the changes. When the trial court asked if Mahoney wished to continue his not guilty plea, defense counsel responded, "I can only surmise that that is the case, Your Honor." RP at 764.

REPORT AND RECOMMENDATION - 5

Sheree Fischel was the State's final rebuttal witness. She testified that Mahoney complained about financial difficulties but never spoke of the devil possessing his wife.

Before closing arguments, the trial court informed Mahoney of his right to testify and asked whether he had consulted his attorney about whether he would testify or remain silent. Mahoney replied, "He talked to me about it." RP at 785. After the court asked further questions, Mahoney stated, "I don't think I'll--I don't understand the options, so I opt not to do it." RP at 785.

During closing argument, the prosecutor told the jury:
[I]t's the defendant's burden to prove that he had a diminished capacity .... Some of you may have been horrified to know that there is such a thing, as a, quote, "voluntary intoxication defense" at all in Washington.

RP at 819. Mahoney objected and the court instructed the jury that the prosecutor's argument was not evidence and that a correct statement of the law appeared in the jury instructions. The prosecutor again argued to the jury:

[L]et me point out to you, intoxication, it's the defendant's burden to prove that he was too intoxicated or somehow there was some link that causes him to be not guilty. That's – that's his problem. Diminished capacity, that's his burden to prove.

RP at 823. Defense counsel again objected and moved for a mistrial. The court denied the motion and instructed the jurors that the burden of proof was explained in the jury instructions.

The jury found Mahoney guilty of first degree assault with a deadly weapon, unlawful imprisonment while armed with a deadly weapon, harassment while armed with a deadly weapon, and misdemeanor violation of a no contact order. The jury found him not guilty of first degree arson.

The court sentenced Mahoney to concurrent 136-month sentences for the three felony counts. Mahoney also received a consecutive deadly weapon enhancement for each felony (a total of 36 months) and 365 additional days for the misdemeanor violation of a no contact order.

[1][State court's footnote] For clarity, Ms. Mahoney is referred to as Shirlyn.
[2][State court's footnote] The trial court eventually dismissed Count 2.

Dkt. 16, Exh. 3.

REPORT AND RECOMMENDATION - 6

**B.**     **Procedural History**

On March 4, 2004, Mr. Mahoney pleaded guilty to first degree assault, domestic violence. Based on aggravating factors, the Clark County Superior Court sentenced him to an exceptional sentence of 240 months. Dkt. 16, Exh. 4. Mr. Mahoney appealed to the Washington Court of Appeals, contesting the superior court's dismissal of his insanity defense. *Id.*, Exh. 5. Before deciding anything on the merits, and based on a stipulated agreement, the Washington Court of Appeals granted Mahoney's motion to withdraw his guilty plea. *Id.*, Exh. 6. The Washington Court of Appeals issued its mandate on June 4, 2004. *Id.*, Exh. 7.

The State then proceeded to try Mr. Mahoney before a jury. The jury found him guilty of first degree assault, felony harassment, and unlawful imprisonment (all constituting domestic violence). *Id.*, Exh. 1. The superior court imposed 172 months of confinement. *Id.* Through counsel, Mr. Mahoney appealed to the Washington Court of Appeals. *Id.*, Exh. 8. He raised 15 assignments of error:

1) Granting the State's motion in limine to preclude Defendant's use of the insanity defense;

2) Failing to give an instruction on insanity;

3) Refusing Defendant's request for rebuttal witnesses;

4) Continuing the trial after ruling that Defendant was incompetent to continue;

5) Admitting custodial statements of Defendant;

6) Denying a motion for mistrial for prosecutorial misconduct in closing argument;

7) Denying a motion for mistrial for the prosecutor eliciting Defendant's criminal history from a witness;

REPORT AND RECOMMENDATION - 7

8)      Limiting Defendant's cross-examination of a witness after the Prosecutor elicited religious conviction to bolster credibility;

9)      Failure to give a reckless endangerment instruction;

10)     Double jeopardy required dismissal/merger of the counts;

11)     Failure to merge counts for sentencing;

12)     Sentencing the misdemeanor count consecutive to the felony counts;

13)     Sentencing the deadly weapon enhancements consecutively;

14)     Denying the motion by counsel to withdraw;

15)     Exhibit personal bias in sentencing.

*Id.*, Exh. 8, pp. 1-2. The court affirmed the conviction in an unpublished opinion. *Id.*, Exh. 3.

Through counsel, Mr. Mahoney petitioned for review in the state's highest court. *Id.*, Exh. 11.

He raised the following claims:

1)      THE COURT ERRED IN RULING THAT THE DEFENDANT WAS COMPETENT THIRTY MINUTES AFTER RULING, BASED ON THE COURT ORDERED MID-TRIAL COMPETENCY EXAMINATION, THAT THE DEFENDANT WAS INCOMPETENT

2)      THE COURT ERRED IN GRANTING THE STATE'S MOTION IN LIMINE TO PRECLUDE THE INSANITY DEFENSE

3)      THE COURT ERRED IN DENYING THE DEFENDANT A FAIR TRIAL ON HIS DEFENSE OF DIMINISHED CAPACITY, AS SHOWN BY THE CUMULATIVE IMPACT OF THE ERRORS AND MISCONDUCT CONCERNING THAT DEFENSE

4)      THE COURT ERRED IN EXPRESSING PARTIALITY IN SENTENCING.

*Id.*, Exh. 11, at ii. Without comment, the Washington Supreme Court denied review on

September 6, 2006. *Id.*, Exh. 12. The Washington Court of Appeals then issued its mandate. *Id.*,

Exh. 13.

REPORT AND RECOMMENDATION - 8

On March 19, 2007, Mr. Mahoney filed a personal restraint petition in the Washington Supreme Court, which transferred the case to the Washington Court of Appeals. *Id.*, Exh. 14. In his petition, Mahoney raised the following claims:

    1)      being subjected to a psychiatric evaluation without counsel present;

    2)      failure to have a jury decide whether his convictions were parts of the same criminal conduct;

    3)      defective information;

    4)      admission of statements he made during his psychiatric evaluation;

    5)      interference with the assistance of counsel;

    6)      ineffective assistance of counsel; and

    7)      cumulative error.

*Id.*, Exh. 21, p.1.

The Washington Court of Appeals called for a supplemental response from the State on several claims. *Id.*, Exh. 18. After receiving further briefing, the court dismissed the petition. *Id.*, Exh. 21. Mr. Mahoney moved for discretionary review in the Washington Supreme Court, *Id.*, Exh. 22, in which he raised the following issues:

    1)      Did the Trial Court deny me the right to counsel at a "critical" stage of the proceedings against me?

    2)      Did the Trial Court's sentencing procedure deny and deprive Petitioner of his Federal and State Constitutional Right to have a jury determine beyond a reasonable doubt all facts legally essential to his sentence?

    3)      Was the charging document both defective and prejudicial in its construction, denying the petitioner his State and Federal Constitutional Right to a fair and impartial trial?

    4)      Did the Trial Court violate Petitioner's 6th and 14th Amendment Rights of the United States Constitution by allowing illegally obtained information to be presented to the jury?

REPORT AND RECOMMENDATION - 9

5)    Did the government violate the petitioner's 6th Amendment right by
      ordering defendant to "not contact his ATTORNEY"?

6)    Was the Petitioner denied the effective assistance of counsel guaranteed
      by the 6th Amendment to the United States Constitution?

7)    Did the cumulative effect of the multiple Constitutional violations, both
      State and Federal, deny Petitioner the right to a fair and impartial trial with
      a fair and impartial jury?

*Id.*, Exh. 22, p. 2.

The Washington Supreme Court denied review in a ruling by the commissioner.  *Id.*, Exh.

23.  Mr. Mahoney moved to modify the ruling.  *Id.*, Exh. 24.  The court denied the motion

without comment on February 4, 2009.  *Id.*, Exh. 25.  The Washington Court of Appeals issued

its certificate of finality on May 21, 2009.  *Id.*, Exh. 26.

## II.  ISSUES FOR FEDERAL HABEAS REVIEW

Mr. Mahoney presents this Court with four grounds for federal habeas relief, which are

summarized as follows:

1)    The trial court denied Mahoney's right to counsel at the mental health
      evaluation;

2)    The trial court interfered with Mahoney's right to counsel by ordering that
      Mahoney have no contact with his former attorney;

3)    Mahoney was not competent to stand trial;

4)    The trial court denied Mahoney's right to present a complete defense (i.e.,
      an insanity defense).

Dkt. 5, pp. 8-15.  (CM-ECF pagination).

## III.  EXHAUSTION

Respondent concedes that Mr. Mahoney exhausted his first claim (denial of right to

counsel at a mental health evaluation) and third claim (incompetency to stand trial).   Dkt. 15, p.

REPORT AND RECOMMENDATION - 10

10 (citing Dkt. 16, Exh. 14, p. 3 and Exh. 22, p. 5). Respondent contends, however, that Mr. Mahoney failed to exhaust his second claim (trial court's interference with his right to counsel) and fourth claim (denial of right to present insanity defense)  and that those claims are procedurally barred.

For the reasons set forth more fully below, the undersigned agrees that Mr. Mahoney has failed to exhaust his second and fourth claims.

## IV.  EVIDENTIARY HEARING

The decision to hold a hearing is committed to the court's discretion. *Williams v. Woodford*, 306 F.3d 665, 688 (9th Cir. 2002).   State court findings are presumptively correct in federal habeas corpus proceedings, placing the burden squarely on the petitioner to rebut the presumption by clear and convincing evidence.  28 U.S.C. § 2254(e)(1).  In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief. *Schriro v. Landrigan*, 550 U.S. 465, 468 (2007).  Because the deferential standards prescribed by § 2254 of the Antiterrorism and Effective Death Penalty Act (AEDPA) control whether to grant habeas relief, a federal court must taken into account those standards in deciding whether an evidentiary hearing is appropriate. *Id.*

An evidentiary hearing is not required where the petition raises solely questions of law or where the issues may be resolved on the basis of the state court record. *Totten v. Merkle*, 137 F.3d 1172, 1176 (9th Cir. 1998).  The petitioner must demonstrate that an evidentiary hearing would materially advance his claims and explain why the record before the court, or an expanded record, is inadequate for review. *Totten*, 137 F.3d at 1176-77; see also Rule 8 of the Rules Governing  2254 Cases.  It is not the duty of the state court to ensure that the petitioner develops

the factual record supporting a claim. *Lambert v. Blodgett*, 393 F.3d 943, 969 n.16 (9th Cir. 2004) (citing *McKenzie v. McCormick*, 27 F.3d 1415, 1419 (9th Cir. 1994)); see also *Baja v. DuCharme*, 187 F.3d 1075, 1079 (9th Cir. 1999); *In re Rice*, 118 Wash.2d 876, 884, 828 P.2d 1086, cert. denied, 506 U.S. 958 (1992).

The Court finds that an evidentiary hearing is not required in this case as Mr. Mahoney's habeas claims are matters that can be resolved by reference to the state court record. His habeas claims raise purely issues of law, rather than factual disputes, and therefore, an evidentiary hearing to resolve questions of fact, is not necessary to resolve his claims.

## V. STANDARD OF REVIEW

Federal courts may intervene in the state judicial process only to correct wrongs of a constitutional dimension. *Engle v. Isaac*, 456 U.S. 107 (1983). Pursuant to the federal habeas statute for state convictions, a federal court may entertain an application for writ of habeas corpus "only on the ground that [the petitioner] is in custody in violation of the constitution or law or treaties of the United States." § 2254(a)(1995). The Supreme Court has repeatedly held that federal habeas corpus relief does not lie for errors of state law. *Estelle v. McGuire*, 502 U.S. 62 (1991); *Lewis v. Jeffers*, 497 U.S. 764 (1990); *Pulley v. Harris*, 465 U.S. 37, 41 (1984).

In a habeas corpus petition, the Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) establishes the district court's standard of review of the state court's decision. *Barker v. Fleming*, 423 F.3d 1085, 1091 (9th Cir. 2005). Under AEDPA, a federal court cannot grant a writ of habeas corpus to a state prisoner with respect to any claim adjudicated on the merits in state court unless the state court's adjudication of the claim:

> (1) resulted in a decision that was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States; or

(2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d).

The AEDPA standard of review "demands that state-court decisions be given the benefit of the doubt." *Woodford v. Visciotti*, 537 U.S. 19, 24 (2002).

Under 28 U.S.C. § 2254(d)(1), a state court decision is "contrary to" the Supreme Court's "clearly established precedent if the state court applies a rule that contradicts the governing law set forth" in the Supreme Court's cases. *Lockyer v. Andrade*, 538 U.S. 63, 73 (2003) (quoting *Williams*, 529 U.S. at 405-06). A state court decision also is contrary to the Supreme Court's clearly established precedent "if the state court confronts a set of facts that are materially indistinguishable from a decision" of the Supreme Court, "and nevertheless arrives at a result different from" that precedent. *Id.*

A state court decision can involve an "unreasonable application" of the Supreme Court's clearly established precedent in the following two ways: (1) the state court "identifies the correct governing legal rule" from the Supreme Court's cases, "but unreasonably applies it to the facts" of the petitioner's case; or (2) the state court "unreasonably extends a legal principle" from the Supreme Court's precedent "to a new context where it should not apply or unreasonably refuses to extend that principle to a new context where it should apply." *Williams*, 529 U.S. at 407. However, "[t]he 'unreasonable application' clause requires the state court decision to be more than incorrect or erroneous." *Lockyer*, 538 U.S. at 75. That is, "[t]he state court's application of clearly established law must be objectively unreasonable." *Id.*

Under 28 U.S.C. § 2254(d)(2), a federal petition for writ of *habeas corpus* also may be granted "if a material factual finding of the state court reflects 'an unreasonable determination of

the facts in light of the evidence presented in the State court proceeding.'" *Juan H. v. Allen*, 408 F.3d 1262, 1270 n.8 (9th Cir. 2005) (9th Cir. 2005) (quoting 28 U.S.C. § 2254(d)(2)). As noted above, however, "[a] determination of a factual issue made by a State court shall be presumed to be correct," and the petitioner has "the burden of rebutting the presumption of correctness by clear and convincing evidence." 28 U.S.C. § 2254(e)(1).

## VI. DISCUSSION

### A. Second and Fourth Claims – Procedural Bar and Exhaustion

In his second claim for habeas relief, Mr. Mahoney claims that the trial court interfered with his right to counsel by ordering that he have no contact with his former attorney. Dkt. 5, p. 8. In his fourth claim for habeas relief, Mr. Mahoney claims that the trial court denied him the right to present a complete defense, *i.e.,* insanity defense. *Id.*, p. 13. Both of these claims are now barred in state court and in federal court.

#### 1. Second Claim – Interference by Court of Right to Counsel

Respondent argues that Mr. Mahoney failed to obey state court procedural rules in briefing his second claim for relief in state court and that the state's dismissal of his claims based on *In Re* Rice, 118 Wn.2d 876, 828 P.2d 1086 (1992), represents an independent and adequate state bar to review of Mr. Mahoney's second claim. Dkt. 15, p. 13 (citing Dkt. 16, Exh. 23, pp. 1-2).

The Washington Supreme Court held,

Mr. Mahoney further claims that the trial court interfered with his right to counsel by instructing him not to speak to his attorney. But Mr. Mahoney's bald, conclusory, and self-serving allegation lacks sufficient factual support to merit consideration. *See In re Pers. Restraint of Rice*, 118 Wn.2d 876, 886, 828 P.2d 1086 (1992). The few available records on this question show the trial court replaced Mr. Mahoney's original attorney with a new one, apparently because Mr. Mahoney could not get along with his first attorney. While it may be possible the

REPORT AND RECOMMENDATION - 14

> trial court instructed Mr. Mahoney at that point not to communicate with former counsel, there is no indication in the record that the trial court instructed Mr. Mahoney not to communicate with his new attorney. To the contrary, subsequent records imply there was communication between Mr. Mahoney and new counsel, particularly on mental health and insanity and diminished capacity defense issues.

Dkt. 16, Exh. 23, pp. 1-2.

If a petitioner fails to obey state procedural rules, the state court may decline review of a claim based on that procedural default. *Wainwright v. Sykes*, 433 U.S. 72 (1977). If the state court judgment rests on a state procedural bar, the petitioner is barred from asserting the same claim in a federal habeas corpus proceeding. *Harris v. Reed*, 489 U.S. 255, 263 (1989); *Noltie v. Peterson*, 9 F.3d 802, 805 (9th Cir. 1993); *Shumway v. Payne*, 223 F.3d 982 (9th Cir. 2000). The Court must honor the procedural bar even if the state court also reaches the merits of the claim in an alternative holding. *Harris*, 489 U.S. at 264 n.10; *Cavanaugh v. Kincheloe*, 877 F.2d 1443, 1447 n.2 (9th Cir. 1989). A barred claim is not cognizable unless the prisoner demonstrates cause and prejudice or actual innocence. *Coleman v. Thompson*, 501 U.S. 722, 750 (1991).

Federal courts "will not review a question of federal law decided by a state court if the decision that court rests on a state law ground that is independent of the federal question and adequate to support the judgment." *Coleman*, 501 U.S. at 729; *King v. Lamarque*, 464 F.3d 963, 965 (9th Cir. 2006). "[T]he procedural default doctrine is a specific application of the general adequate and independent state grounds doctrine. *Wells v. Maas*, 28 F.3d 1005, 1008 (9th Cir. 1994), *Fields v. Calderon*, 125 F.3d 757, 761-62 (9th Cir. 1997), *cert. denied*, 523 U.S. 1132 (1998). The procedural default doctrine "bar[s] federal habeas [review] when a state court declined to address a prisoner's federal claims because the prisoner had failed to meet a state procedural requirement. *Coleman*, 501 U.S. at 729-30; *Hanson v. Mahoney*, 433 F.3d 1107, 1113 (9th Cir.), *cert. denied*, 547 U.S. 1180 (2006).

REPORT AND RECOMMENDATION - 15

A state procedural rule is considered an independent bar if it is not interwoven with federal law or dependent upon a federal constitutional ruling. *Ake v. Oklahoma*, 470 U.S. 68, 75 (1985); *Michigan v. Long*, 463 U.S. 1032, 1040-41 (1983); *LaCrosse v. Kernan,* 244 F.3d 702, 704 (9th Cir.2001). A state procedural rule constitutes an adequate bar to federal court review if it was "firmly established and regularly followed" at the time it was applied by the state court. *Ford v. Georgia*, 498 U.S. 411, 423-24 (1991); *King*, 464 F.3d at 965. "A state ground is independent and adequate only if the last state court to which the petitioner presented the claim 'actually relied' on a state rule that was sufficient to justify the decision." *Carter v. Giurbino*, 385 F.3d 1194, 1197 (9th Cir.2004), *cert. denied*, 543 U.S. 1190 (2005); *Koerner v. Grigas*, 328 F.3d 1039, 1049-50 (9th Cir.2003).

Procedural default is an affirmative defense, *Gray v. Netherland*, 518 U.S. 152, 165-66 (1996); *Insyxiengmay v. Morgan*, 403 F.3d 657, 665 (9th Cir.2005), "and the state has the burden of showing that the default constitutes an adequate and independent ground." *Insyxiengmay*, 403 F.3d at 665-66; *Bennett v. Mueller*, 322 F.3d 573, 585 (9th Cir.), *cert. denied,* 540 U.S. 938 (2003). However, "[o]nce the state has adequately pled the existence of an independent and adequate state procedural ground as an affirmative defense, the burden to place that defense in issue shifts to the petitioner. The petitioner may satisfy this burden by asserting specific factual allegations that demonstrate the inadequacy of the state procedure, including citation to authority demonstrating inconsistent application of the rule. Once having done so, ... it is the State who must bear the burden of demonstrating that the bar is applicable." *Bennett*, 322 F.3d at 586; *King*, 464 F.3d at 966-67.

The *In re Rice* bar, upon which the Washington Supreme Court relied in holding that Mr. Mahoney's second claim did not merit consideration, is an independent state law as its

application does not rest primarily on federal law; it does not require the state court to determine if federal error has occurred. Instead, under *In Re Rice* , the court simply determines if the petitioner has adequately briefed the claim. See, e.g., *In re Dyer*, 143 Wn.2d 384, 397, 20 P.3d 907 (2001); *In re Gronquist*, 138 Wn.2d 388, 396, 978 P.2d 1083 (1999); *In re Lord*, 123 Wn.2d 296, 303, 868 P.2d 835 (1994); *In re Rice*, 118 Wn.2d at 886; *In re Reise*, 146 Wn. App. 772, 780, 192 P.3d 949 (2008). The state court does not consider the merits of the claim in deciding whether to apply the bar. Consequently, the state rule is based upon state law, and it is "independent."

The *In Re Rice* bar is also clearly established and was announced before Mr. Mahoney's procedural default in this case. The rule requiring allegations to be based on more than speculation, conjecture, or inadmissible hearsay was announced, at the latest, in 1992, when the Washington Supreme Court issued the *Rice* opinion.

The *In Re Rice* bar is also consistently applied. "Consistent application" does not mean undeviating adherence to such a rule without exception. A procedural bar is adequate if it is applied by the state court in the vast majority of cases. *Dugger v. Adams*, 489 U.S. 401, 410 n. 6 (1989); *Moran v. McDaniel*, 80 F.3d 1261, 1270 (9th Cir. 1996). The Washington courts have consistently applied the *Rice* bar in numerous cases. See, e.g., *In re Dyer*, 143 Wn.2d at 397; *In re Gronquist*, 138 Wn.2d at 396; *In re Lord*, 123 Wn.2d at 303; *In re Reise*, 146 Wn. App. at 780.

Because Respondent has raised the defense of an independent and adequate state procedural rule, *see Paulino v. Castro*, 371 F.3d 1083, 1093 (9th Cir. 12004), the burden now shifts to Petitioner to place Respondent's affirmative defense in issue. *King*, 464 F.3d at 965 (9th Cir. 2006). "In most circumstances, the best method for petitioners to place the defense in issue

is to assert 'specific factual allegations that demonstrate the inadequacy of the state procedure' by citing relevant cases." *King*, 464 F.3d at 967; *Bennett*, 322 F.3d at 586. Mr. Mahoney did not reply to Respondent's answer. Thus, Mr. Mahoney has not met his burden to place Respondent's affirmative defense in issue, *Ortiz v. Stewart*, 149 F.3d 923, 932 (9th Cir.1998), *cert. denied*, 526 U.S. 1123 (1999), and he has procedurally defaulted his Second Claim.

The Second Claim is, therefore, not cognizable in this court absent a demonstration of cause for the default and actual prejudice as a result of the alleged violation of federal law, or a demonstration that failure to consider the claims will result in a fundamental miscarriage of justice." *Coleman*, 501 U.S. at 750, 111 S.Ct. at 2565; *Medley v. Runnels,* 506 F.3d 857, 869 (9th Cir.2007) (en banc). The petitioner has the burden of proving both cause and prejudice. *Bousley v. United States*, 523 U.S. 614, 622 (1998); *Coleman*, 501 U.S. at 750. Mr. Mahoney does not claim a "miscarriage of justice," nor has he shown cause or prejudice.

### 2.     Fourth Claim - Denial of Right to Present Insanity Defense

In his fourth claim for habeas relief, Mr. Mahoney asserts that the trial court denied his right to present a complete defense because it denied him the ability to raise insanity as a defense. Dkt. 5, p. 13. Mr. Mahoney raised a similar claim in state court, but did not cite federal law.

A state prisoner must exhaust state remedies with respect to each claim before petitioning for a writ of habeas corpus in federal court. *Granberry v. Greer*, 481 U.S. 129, 134 (1987).

28 U.S.C. § 2254 (b)(1) states, in pertinent part, that:

 (b)(1) An application for a writ of habeas corpus on behalf of a person in custody
 pursuant to the judgment of a State court shall not be granted unless it appears
 that—

REPORT AND RECOMMENDATION - 18

(A) the applicant has exhausted the remedies available in the courts of the State; or

(B)(i) there is an absence of available State corrective process; or

(ii) circumstances exist that render such process ineffective to protect the rights of the applicant.

28. U.S.C. § 2254 (b)(1) (Emphasis added.)

Section 2254(b)(1) provides that a habeas petition must be denied if the petitioner failed to exhaust his state court remedies. 28 U.S.C. § 2254(b)(1), (c); *Duncan v. Henry*, 513 U.S. 364, 365-66 (1995); *Picard v. Connor*, 404 U.S. 270, 275 (1971). In order to exhaust state remedies, the petitioner must "fairly present" his federal claims to the state courts thereby giving the state the opportunity to address and correct alleged violations of the petitioner's federal rights. *Duncan*, 513 U.S. at 365; *Hiivala v. Wood*, 195 F.3d 1098, 1106 (9th Cir.1999); *Johnson v. Zenon*, 88 F.3d 828, 830 (9th Cir.1996). "[S]tate prisoners must give the state courts one full opportunity to resolve any constitutional issues by invoking one complete round of the State's established appellate review process." *O'Sullivan v. Voerckel*, 526 U.S. 838, 845, 119 S.Ct. 1728, 144 L.Ed.2d 1 (1999).

A complete round of the state's established review process includes presentation of a petitioner's claim to the state's highest court. *James v. Borg*, 24 F.3d 20, 24 (9th Cir. 1993), cert. denied 513 U.S. 935 (1994). However, "[s]ubmitting a new claim to the state's highest court in a procedural context in which its merits will not be considered absent special circumstances does not constitute fair presentation." *Roettgen v. Copeland*, 33 F.3d 36, 38 (9th Cir. 1994) (citing *Castille v. Peoples*, 489 U.S. 346, 351 (1989)). Consequently, presentation of a federal claim for the first time to a state's highest court on discretionary review does not satisfy the exhaustion requirement. *Castille*, 489 U.S. at 351; *Casey v. Moore*, 386 F.3d 896, 915-18 (9th Cir. 2004),

cert. denied 545 U.S. 1146 (2005). But see *Ylst v. Nunnemaker*, 501 U.S. 797, 801 (1991) ("If the last state court to be presented with a particular federal claim reaches the merits, it removes any bar to federal-court review that might otherwise have been available").

"To 'fairly present' his federal claim to the state courts, [petitioner] had to alert the state courts to the fact that he was asserting a claim under the United States Constitution." *Hiivala*, 195 F.3d at 1106 (citing *Duncan*, 513 U.S. at 365-66). The Supreme Court stated in *Gray v. J.D. Netherland* that to "fairly present" a claim to the state court, "it is not enough to make a general appeal to a constitutional guarantee as broad as due process to present the 'substance' of a claim." Rather, the petitioner "must include reference to a specific federal constitutional guarantee, as well as a statement of the facts that entitle the petitioner to relief." 518 U.S. 152, 162-63 (1996).

State courts are not required to comb the record in order to discover the federal nature of the prisoner's claim; the federal claim must be contained within the four corners of the prisoner's state court brief or petition. *Baldwin v. Reese*, 541 U.S. 27, 31-32 (2004). Additionally, both federal and state briefing rules forbid the practice of incorporation by reference. See Fed. R. App. P. 28-1(b); *Kibler v. Walters*, 220 F.3d 1151, 1153 (9th Cir. 2000); *Saldin Sec., Inc. v. Snohomish County*, 134 Wn.2d 288, 949 P.2d 370, 375 n.4 (1998) (Supreme Court will not review incorporated arguments from Court of Appeals briefing).

Mr. Mahoney raised a claim similar to his fourth claim for relief in state court, but he did not present the claim as a federal claim. Dkt. 16, Exh. 8, p, 38; Exh. 11, pp. 10-13. Instead, Mr. Mahoney relied on state statutes and state court cases. For a claim to be cognizable in federal court, the claim must first be presented to the Washington State Supreme Court based upon the same federal legal theory and the same factual basis as the claim is subsequently asserted here.

See, *Hudson*, 686 F.2d 826, 829-30 (9th Cir. 1982). Moreover, the claim must be presented as a federal constitutional violation at every level of the Washington state courts' review. *See Ortberg v. Moody,* 961 F.2d 135, 138 (9th Cir. 1992) (a petitioner must properly raise a habeas claim on every level of direct review in order to properly exhaust).

The record here clearly reflects that Mr. Mahoney's fourth claim was not raised as a federal claim at every level of the state courts' review. Therefore, it is unexhausted. In addition, the record reflects that his claim is also procedurally barred pursuant to RCW 10.73.090(3), RCW 10.73.140, and RAP 16.4(d), because more than one year has passed since his conviction became final and he has previously filed a personal restraint petition.

Under Washington law, a defendant may not collaterally challenge a conviction more than one year after the conviction becomes final. RCW 10.73.090(1). Mr. Mahoney's conviction became final for purposes of state law on September 27, 2006, the date that the Washington Court of Appeals filed its mandate in his direct appeal. Exhibit 13; RCW 10.73.090(3). Because more than one year has passed since his conviction became final, the claim is now time-barred in state court.

Washington law also prohibits the filing of successive collateral challenges. RCW 10.73.140; RAP 16.4(d). Having previously filed a personal restraint petition, Mahoney is barred from filing another collateral challenge absent a showing of cause and prejudice or actual innocence.

**(a)      Dismissal of Unexhausted Claim and Adjudication of "Mixed" Petition Not Required When Petitioner is Procedurally Barred From Returning to State Court**

Because Mr. Mahoney's fourth claim is unexhausted, the Court is presented with a mixed petition containing both exhausted and unexhausted federal claims, which, in itself requires

dismissal of the petition. Federal courts "may not adjudicate mixed petitions for habeas corpus, that is, petitions containing both exhausted and unexhausted claims." *Rhines v. Weber,* 125 S. Ct. 1528, 1532-33 (2005). Instead, such petitions "must be dismissed for failure to completely exhaust available state remedies." *Jefferson v. Budge,* 419 F.3d 1013, 2005 WL 1949886 *2 (9th Cir. 2005) (citing *Rose v. Lundy*, 455 U.S. 509, 518-22 (1982)).

Before dismissing the petition, generally the Court is required to provide a petitioner with "the choice of returning to state court to exhaust his claims or of amending or resubmitting the habeas petition to present only exhausted claims to the district court." *Id.; see also Rhines*, 125 S. Ct. at 1535; *Tillema v. Long*, 253 F.3d 494, 503 (9th Cir. 2001) (court must provide *habeas corpus* litigant with opportunity to amend mixed petition by striking unexhausted claims). However, when a petitioner would be procedurally barred from returning to the state court to address the unexhausted claims, the Court need not provide Petitioner with this choice.

In this case, the record reflects that Mr. Mahoney is now procedurally barred from presenting his unexhausted claim to the Washington State courts. Pursuant to RCW 10.73.090(1), no petition or motion for collateral attack on a judgment and sentence in a criminal case may be filed more than one year after the judgment becomes final. Mr. Mahoney's conviction became final for purposes of state law on September 27, 2006, the date that the Washington Court of Appeals filed its mandate in his direct appeal. Dkt. 16, Exh. 13; RCW 10.73.090(3). Mr. Mahoney is now time-barred from filing a personal restraint petition in Washington state courts to properly exhaust his fourth habeas claim. RCW 10.73.090(3).

Washington law also prohibits the filing of successive collateral challenges. RCW 10.73.140; RAP 16.4(d). Because Mr. Mahoney has already filed a personal restraint petition in

Washington State courts, he will also be procedurally barred from filing another such petition unless he can show good cause and prejudice or actual prejudice.

Only if a petitioner "can demonstrate cause for the default and actual prejudice as a result of the alleged violation of federal law, or demonstrate that failure to consider the claims will result in a fundamental miscarriage of justice," will he be entitled to federal *habeas corpus* review. *See Boyd v. Thompson,* 147 F.3d 1124, 1126 (9th Cir. 1998) (citing *Coleman*, 501 U.S. 722 at 750.

**(b) Petitioner Cannot Show Cause and Actual Prejudice To Overcome Procedural Default**

To satisfy the "cause" prong, petitioner must show that 'some objective factor external to the defense" prevented him from complying with the state's procedural rule. *McCleskey v. Zant*, 499 U.S. 467, 493 (1991) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986)). Objective factors constituting "cause" include "interference by officials" making compliance with the procedural rule impracticable, as well as "a showing that the factual or legal basis" for the claims "was not reasonably available." *Id*. at 493-94 (internal quotes omitted). Constitutionally ineffective assistance of counsel also constitutes cause, but any attorney error short of that will not excuse procedural default. *Id*. at 494.

The mere fact that a petitioner is *pro se* or lacks knowledge of the law is insufficient to satisfy the cause prong. That is, "[w]hen a pro se petitioner is able to apply for post-conviction relief to a state court, the petitioner must be held accountable for failure to timely pursue his remedy to the state supreme court." *Hughes v. Idaho State Board of Corrections*, 800 F.2d 905, 909 (9th Cir. 1986) (finding petitioner's claims of illiteracy and lack of help in appealing post-conviction petition, though unfortunate, to be insufficient to meet cause standard); *Boyd*,

147 F.3d at 1126-27. Once a petitioner establishes cause, he must show "'actual prejudice' resulting from the errors of which he complains." *Id.* (quoting *United States v. Frady*, 456 U.S. 152, 168 (1982)). Such prejudice exists if the alleged errors worked to the petitioner's "*actual* and substantial disadvantage, infecting his entire trial with error of constitutional dimensions." *Frady*, 456 U.S. at 170 (emphasis in original). In the alternative, a *habeas corpus* petition may be granted without a showing of cause in those "extraordinary instances when a constitutional violation probably has caused the conviction of one innocent of the crime." *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96.

Mr. Mahoney has made no showing that some objective factor external to his defense prevented him from complying with Washington's procedural bar rule. Because Mr. Mahoney "cannot establish any reason, external to him, to excuse his procedural default," this Court need not address the issue of actual prejudice." *Boyd*, 147 F.3d at 1127; *Thomas v. Lewis*, 945 F.2d 1119, 1123 n.10 (9th Cir. 1991). Furthermore, because Mr. Mahoney does not present new evidence of actual innocence, this is not the kind of extraordinary instance where the petition should be granted despite the absence of a showing of cause. *McCleskey*, 499 U.S. at 494; *Murray*, 477 U.S. at 495-96. See also, *Schlup v. Delo*, 115 S. Ct. 851, 867 (1995) ("The exception is available only where the petitioner 'supplements his constitutional claim with a colorable showing of factual innocence.'")

Mr. Mahoney has not provided the Court with any evidence of cause and prejudice or a fundamental miscarriage of justice. Because he cannot excuse his procedural default, his second and fourth habeas claims alleging that the trial court interfered with his right to counsel and denied him the right to present an insanity defense, are not cognizable in this federal habeas corpus proceeding.

REPORT AND RECOMMENDATION - 24

**B.      First Claim – Denial of Right to Counsel at Mental Health Evaluation**

In his first claim, Mr. Mahoney argues that he was entitled to counsel at his mental

health evaluation pursuant to RCW 10.77.020(3)[1] and that the trial court denied his right to

counsel at the evaluation.  Dkt. 6, p. 2.  He states that his mental health reviewer reviewed

police discovery materials prior to the evaluation and therefore, the reviewer was well aware

that he had previously requested assistance of counsel.  Dkt. 6, p. 2.  Respondent argues that

Mr. Mahony expressly waived his right to counsel at the evaluation.  Dkt. 15, p. 23.

In this case, a doctor interviewed Mr. Mahoney on July 1, 2003, and issued a report

summarizing her findings, which states that Mr. Mahoney was advised of his right to an

attorney at the evaluation and that he waived that right:

> The defendant was interviewed by the undersigned at the Clark County Jail in
> Vancouver, Washington on 7/01/03 for a period of approximately one hour and
> 15 minutes. *Prior to the interview the defendant was informed of the purpose and
> non-confidential nature of the evaluation, the right not to answer any questions,
> the right to have his attorney present,* the recipients of the report and the
> possibility for a mental health treatment recommendation.  Mr. Mahoney
> demonstrated a clear understanding of these parameters and *chose to proceed with
> the clinical interview*.

Dkt. 16, Exh. 19, Appen. F (emphasis added).

When addressing this issue, the Washington Court of Appeals and the Washington

Supreme Court rejected Mr. Mahoney's claim that his right to an attorney was denied:

> First, Mahoney argues that he was denied the right to have counsel present at the
> psychiatric evaluation conducted by Dr. Dean. RCW 10.77.020(3). But Mahoney
> does not present any evidence that he asked to have counsel present. According to
> Dr. Dean, she advised Mahoney of his right to have counsel present and he
> decided to proceed without counsel present. The only evidence he presents is that
> he asked for an attorney when he was arrested. That invocation of the right to

---

[1] Washington Revised Code section 10.77.020(3) provides that: "Any time the defendant is being examined by court appointed experts or professional persons pursuant to the provisions of this chapter, the defendant shall be entitled to have his or her attorney present."

counsel is not enough to serve as a request to have counsel present at his psychiatric evaluation.

Dkt. 16, Exh. 21, pp. 1-2.

Mr. Mahoney claims that he was denied the right to counsel at a mental health evaluation. But the evaluation report states that the evaluating doctor informed Mr. Mahoney of his right to have counsel present and that Mr. Mahoney agreed to proceed anyway. Mr. Mahoney's claim to the contrary is unpersuasive. Mr. Mahoney's waiver of counsel at the evaluation defeats his related claim that the evaluation was inadmissible because he lacked counsel.

Dkt. 16, Exh. 23, p. 1.

The Sixth Amendment right to counsel encompasses all critical stages of a criminal prosecution. *U.S. v. Wade*, 388 U.S. 218, 224 (1967). In *Estelle v. Smith*, 451 U.S. 454, 471 (1981), the Supreme Court held that the defendant had a right to consult with his attorney before undergoing a psychological evaluation because the evaluation proved to be critical to the outcome of his trial. The Supreme Court noted, however, that the Fifth Circuit decision below did not find any constitutional right to have counsel actually present during a psychological evaluation. It quoted the Fifth Circuit as stating: "'an attorney present during a psychiatric interview could contribute little and might seriously disrupt the examination.'" *Id.* at 470 n. 14 (quoting *Estelle v. Smith*, 602 F.2d 694, 708 (5th Cir.1979)). There is therefore no federal right to have counsel present at a psychological evaluation, regardless of a provision therefor under state law. Accordingly, prejudice cannot be presumed here.[2]

Because the state court's dismissal of Mr. Mahoney's first claim was not contrary to, or an unreasonable application of, clearly established United States Supreme Court precedent, the undersigned recommends that Mr. Mahoney's first claim for habeas relief be denied.

---

[2] In addition, Mr. Mahoney was not foreclosed from challenging the results of the psychological examination at trial. See, e.g., U.S. v. Glover, 596 F.2d 857, 865-67 (9th Cir.1979); U.S. v. Bodey, 547 F.2d 1383, 1385 (9th Cir.1977); U.S. v. Valtierra, 467 F.2d 125, 126 (9th Cir.1972).

REPORT AND RECOMMENDATION - 26

**C.      Third Claim – Incompetency to Stand Trial**

In his third claim for federal habeas relief, Mr. Mahoney contends that he was not competent to stand trial. Dkt. 6, p. 7. However, Mr. Mahoney presents no facts to create a real and substantial doubt as to his incompetency other than the conclusory statement that his crime was truly an insane act.[3] Dkt. 6, p. 8. Rather, he complains that when the trial judge was considering the issue of his competency, she first ruled that he was incompetent and then after further consideration, ruled that he was competent to stand trial. Dkt. 6, p. 7 (citing pages 697 through 700 of the trial transcript).

Respondent argues, however, that the court was within its discretion to find that Mr. Mahoney was competent as it heard testimony from experts, one of whom suspected that he was lingering. Dkt. 15, p. 25.

The Washington State Court of Appeals denied Mr. Mahoney's claim that the trial court erred when it did not find him incompetent to stand trial:

> Mahoney contends that the trial court erred when it did not find him incompetent at trial. He argues that in the middle of trial, he suffered a break from reality and was thereafter unable to rationally understand the proceedings or communicate with his attorney.
>
> The Fourteenth Amendment's due process clause prohibits the conviction of a person who is not competent to stand trial. *Drope v. Missouri*, 420 U.S. 162, 171, 95 S. Ct. 896, 43 L. Ed. 2d 103 (1975); *Pate v. Robinson*, 383 U.S. 375, 378, 86 S. Ct. 836, 15 L. Ed. 2d 815 (1966). The constitutional standard for competency to stand trial is whether the accused has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding and to assist in his defense with a rational as well as factual understanding of the proceedings against him. *Dusky v. United States*, 362 U.S. 402, 402, 80 S. Ct. 788, 4 L. Ed. 2d 824 (1960).

---

[3] To obtain relief on a substantive incompetence claim, petitioner must present evidence "sufficient to positively, unequivocally, and clearly generate a real, substantial and legitimate doubt as to [his] mental capacity." *Watts v. Singletary*, 87 F.3d 1282, 1290 (11th Cir.1996) (quoting *Bruce v. Estelle*, 483 F.2d 1031, 1043 (5th Cir.1973)).

Under Washington law, "[n]o incompetent person shall be tried, convicted, or sentenced for the commission of an offense so long as such incapacity continues." RCW 10.77.050. The two-part test for legal competency for a criminal defendant in Washington is: (1) whether the defendant understands the nature of the charges; and (2) whether he is capable of assisting in his defense. *State v. Hahn*, 106 Wn.2d 885,894, 726 P.2d 25 (1986). A defendant need not be able to choose among alternative trial strategies to be competent. *State v. Ortiz*, 104 Wn.2d 479, 483, 706 P.2d 1069 (1985).

The trial court has the discretion to order a competency evaluation. *In re Fleming*, 142 Wn.2d 853,862, 16 P.3d 610 (2001); *State v. Thomas*, 75 Wn.2d 516, 518, 452 P.2d 256 (1969). The factors a trial judge may consider in determining whether to order a competency evaluation of an accused under RCW 10.77.060, include the "defendant's appearance, demeanor, conduct, personal and family history, past behavior, medical and psychiatric reports and the statements of counsel." *State v. Dodd*, 70 Wn.2d 513, 514, 424 P.2d 302 (1967).

Here, the trial court entered the original finding of competence under RCW 10.77.060 on July 30, 2003. The competence issue did not arise again until Mahoney made irrational utterances at trial on June 10, 2004. In response, the trial court requested that the Western State experts speak with Mahoney, but he refused to cooperate with a full evaluation. Subsequently, the trial court entertained an offer of proof from the experts.

Dean testified that Mahoney was exercising volitional behavior and that he had the capacity to understand his legal situation and to work with counsel if he chose to do so. She reviewed Mahoney's jail records and testified that nothing in the records indicated any psychotic symptoms while Mahoney was in custody. Dean concluded that Mahoney was not psychotic. Instead, she suspected malingering:

> And then as far as the ideas he expressed about various people being the Devil or wanting Jehovah to take the stand if the Devil is allowed to take the stand, there was nothing in that content to change my previous clinical opinion that he does not have a psychotic disorder and that these statements do not represent delusions, but that at this point, given that these statements are now arising in court in a somewhat dramatic manner immediately following testimony in which I said that if he has an actual psychotic disorder one would expect to see symptoms of it here and now in court, to my mind that raises a serious concern that -- that there's malingering going on actively right now.

RP at 629 (emphasis added). True, on the other hand, testified that he did not believe that Mahoney was pretending. Before Mahoney's outburst, nothing in the

REPORT AND RECOMMENDATION - 28

record indicated that he was incompetent to stand trial. After careful examination of relevant authority, the trial court correctly determined that Mahoney had not met his burden of establishing a reason to doubt his competency. In making its decision, the trial court had the benefit of expert opinion and of being able to observe Mahoney's appearance, conduct, and demeanor first hand. The trial court was in the best position to know whether further questions about Mahoney's competence were warranted.

Thus, we hold that the trial court did not abuse its discretion by electing to proceed with the trial. To hold otherwise would grant leave for any defendant to interrupt the judicial process by simply making a few nonsensical statements mid-trial.

Dkt. 16, Exh. 3, pp. 13-14.

The state appellate court's holding is not contrary to established federal law. It is well settled that the conviction of a criminal defendant who is legally incompetent to stand trial is a violation of constitutional due process. *Godinez v. Moran*, 509 U.S. 389, 396 (1993); *Drope v. Missouri*, 420 U.S. 162, 172-73 (1975). The standard for determining competency to stand trial is whether the defendant "has sufficient present ability to consult with his lawyer with a reasonable degree of rational understanding -- and whether he has a rational as well as factual understanding of the proceedings against him." *Dusky v. United States*, 362 U.S. 402, 402 (1960) (per curiam). If a defendant is incompetent, due process requires that the criminal proceedings be suspended until such time that the defendant regains his competency. *Medina v. California*, 505 U.S. 437, 448 (1992).

State courts are constitutionally obligated to employ procedures adequate to protect against the trial of an incompetent defendant, and a court's failure to observe those procedures is a violation of the defendant's due process right to a fair trial. *Drope v. Missouri*, 520 U.S. at 172; *Pate v. Robinson*, 383 U.S. 375, 386-87 (1966). However, a competency hearing is not required absent a "genuine" or 'substantial" or "bona fide" doubt regarding the defendant's

competency. *Pate v. Robinson*, 383 U.S. at 385; *Hernandez v. Ylst*, 930 F.2d 714, 716 & n. 3 (9th Cir. 1991); *de Kaplany v. Enomoto*, 540 F.2d 975, 979-83 (9th Cir. 1976) (en banc), cert. denied, 429 U.S. 1075 (1977).

As noted above, Mr. Mahoney's argument in this habeas petition is that when the trial judge was considering the issue of his competency, she first ruled that he was incompetent and then after further consideration, ruled that he was competent to stand trial. Dkt. 6, p. 7 (citing pages 697 through 700 of the trial transcript). A careful review of the trial transcript, however, reveals that the trial court interrupted the trial in order to hold a hearing regarding Mr. Mahoney's competency, that the trial judge heard testimony from two expert witnesses, that defense's expert witness further examined Mr. Mahoney and testified as to his findings. Dkt. 16, pp. 615-708. After hearing all the testimony and examining relevant authority provided by counsel, the trial judge ultimately held that Mr. Mahoney had not met his burden of establishing a reason to doubt his competency. Dkt. 16, pp. 706-708. The Washington Court of Appeals held that the trial judge had correctly determined that Mr. Mahoney had not met his burden of establishing a reason to doubt his competency. Dkt. 16, Exh. 3, p. 14.

Here, the evidence reflects that the trial judge did not deprive Mr. Mahoney of a competency hearing, but that after hearing evidence on the subject, concluded that he was competent to stand trial. In addition to the testimony and reports of the experts, the trial court had the benefit of being able to observe Mahoney's appearance, conduct, and demeanor first hand. Thus, the trial judge did not violate Mr. Mahoney's due process right to a fair trial by failing to employ procedures adequate to protect against the trial of an incompetent defendant.[4]

---

[4] Nor is there sufficient evidence to raise a real and substantial doubt as to Mr. Mahoney's competency. *See, e.g., In de Kaplany v. Enomoto*, 540 F.2d 975, 983-85 (9th Cir. 1976) where evidence of two emotional and inappropriate

Because the state court decision was not contrary to, or an unreasonable application of, clearly established Supreme Court precedent, the undersigned recommends that the Court should dismiss Mr. Mahoney's third claim that he was not competent to stand trial.

## VI. CONCLUSION

Based on the foregoing discussion, the undersigned recommends that Mr. Mahoney's habeas petition should be **denied**, and this action **dismissed**.  No evidentiary hearing is required as the record conclusively shows that Petitioner is not entitled to relief.

Pursuant to 28 U.S.C. § 636(b)(1) and Rule 72(b) of the Federal Rules of Civil Procedure, the parties shall have ten (10) days from service of this Report and Recommendation to file written objections.  See also Fed. R. Civ. P. 6.  Failure to file objections will result in a waiver of those objections for purposes of appeal.  *Thomas v. Arn*, 474 U.S. 140 (1985). Accommodating the time limit imposed by Rule 72(b), the Clerk is directed to set the matter for consideration on **December 18, 2009**, as noted in the caption.

DATED this 23<u>rd</u> day of November, 2009.

*Karen L. Strombom*

Karen L. Strombom
United States Magistrate Judge

---

outbursts at trial, coupled with the bizarre and gruesome nature of the crime charged, and psychiatric testimony characterizing the defendant as "severely disturbed" and suffering from paranoid schizophrenia, was insufficient to raise a bona fide doubt with respect to the defendant's competency to stand trial. In cases finding sufficient evidence of incompetency, the petitioners have been able to show either extremely erratic and irrational behavior during the course of the trial, e.g., *Tillery v. Eyman*, 492 F.2d 1056, 1057-58 (9th Cir.1974) (defendant screamed throughout the nights, laughed at the jury, made gestures at the bailiff, disrobed in the courtroom and butted his head through a glass window), or lengthy histories of acute psychosis and psychiatric treatment, e.g., *Moore v. United States*, 464 F.2d 663, 665 (9th Cir.1972) (defendant repeatedly hospitalized for acute mental illness and hallucinations).

REPORT AND RECOMMENDATION - 31